Please rise. The score is now in session. Mr. President, call the next case, please. 3090541. Country Mutual Insurance Company Fertility by Steve Carlson v. National Auto Credit, named after me by Michael Pacer. Mr. Carlson. Steve Carlson for Country Mutual Insurance Company, former appellate in this case. This case involves a rather kind of strange and unlike fact issue, but a fixed issue of $70,000, whether Country Mutual owes that money to National Auto Credit or not. On the theory, the only theory pled below and upon submission to trial court and a judgment in favor of National Auto Credit was on equitable contribution. This involves an accident that had happened a long time ago involving a vehicle owed by the defendant, National Auto Credit, a rental car company. I mentioned that before, a 1994 Ford Escort. That was the vehicle that they owned. That was involved in this accident, driven by John Bennett, who died in the accident, and his passengers, two of them, made claims. And there's various amended complaints that were filed over the years on their behalf for the claims that they were asserted. John Bennett was a son of Lorraine Jenkins. Country Mutual, my client, had issued an automobile policy to Lorraine Jenkins that insured a Hyundai automobile. Ms. Jenkins had another son named Patrick Hatter, who, and it's on the record, too, his policy with Atlanta Casualty Insurance Company, that insured a specific vehicle. And Atlanta was a party in this case throughout the years, and they settled out prior to this appeal or final ruling. So they're no longer a party in the case, but there was a claim that they owed a share of the defense as well. And there was no dispute that at the legend, some of the underlying complaints that on a certain day, the vehicle, Mr. Hatter's vehicle, was in an automobile accident. The vehicle under the Atlanta policy. It was involved in an accident with another vehicle driven by someone insured by State Farm. State Farm paid for, as the rental contract shows with agency, as a third-party biller, they paid for a vehicle to replace the vehicle that had been in the accident while it was being repaired. And Mr. Hatter's vehicle insured under the Atlanta policy because, like I stated, they weren't disputing that their insurer was at fault for that accident. So they got State Farm paid national auto credit for a rental vehicle that was for the use of really Patrick Hatter, but his mother is the one that signed the rental agreement with national auto credit. And then that's when they tried to rely significantly because at one point they asked her in the question, who's your insurer? Her insurer, she says, country companies on the form. And then subsequent to that vehicle being rented, a few days later, there was an accident. The accident where John Bennett is driving that vehicle where, and there's still not clear exactly what happened because he died in the accident. And then the passengers didn't have a really good memory of everything that happened that night. But again, as I said, they're the ones who brought the claims for John Bennett's negligent use of the vehicle rented from national auto credit that was a replacement, temporary replacement vehicle for the Atlanta casualty vehicle that was owned by Patrick Hatter, his brother, son. And there were questions raised about, by all parties, as to the permission or not whether John Bennett had permission to use that vehicle on a day of the fatal accident, his fatal accident. Mr. Carlson, is it correct that there's no dispute that the Ford Escort was a replacement vehicle for the Maxima and not for the Hyundai? Yes, I believe so, because that's why, because that was alleged and that was, there's some testimony that's not all in there. But that was the, there was no question that it was paid for by State Farm. They only paid for it because they were, I believe they were at fault or their insurer was at fault in the accident. There was an accident involving the Maxima, Maxima, sorry, owned by Patrick Hatter. So that was no question. Our vehicle was not involved. Our only vehicle, Country Mutual, the Hyundai, was not involved in any accident. It just happened to be that that was, you know, each, you know, she had a separate coverage from what her son had with one company, and she had her own coverage for her vehicle with Country. And then we have that accident, again, all the claims, and it went on for several years with various amendments to the claims. National Auto Credit was brought in as a direct defendant. There were several amendments. They sought to dismiss themselves. There were issues raised about the statute, you know, under the rental cars, what liability limits they would have. Were they 50? Were they more? Were they unlimited? That was an issue between National Auto Credit and underlying plaintiffs that was being litigated. They did also, in addition to defending themselves, defended John Bennett, who was the driver of the vehicle they owned at the time of the accident. We, Country Mutual, filed a declaratory action. Our declaratory judgment action was filed pre-the original complaint was filed prior to the underlying lawsuit being filed. A claim had been presented. We filed it prior to-so there was no other issue raised about any stop or timeliness of the declaratory because, in this case, it was even filed before the underlying lawsuit was filed. So it was amended also. We amended the declaratory over the years as the underlying place became amended. And it proceeded in Will County for a number of years. And Judge Penn had a couple of rulings, and there were some disputes of the rulings. I recognize it's kind of vague because in one page he says the Hyundai was-Larry Jenkins was operable. In another page he says it was a question of fact of whether it was operable or not. But there was no-here, it was not-this vehicle from agency was not a substitute for that vehicle. It was not-you had to be a substitute for two other vehicles. It's-the chain is broken with Patrick Hatter's vehicle being in the accident and a vehicle obtained to replace or temporarily until it's repaired, Mr. Hatter's. In fact, she is the one that rented that car. She signed off on the paperwork, and I realize that's what makes it more complicated for me in the face of the paper because I don't know the circumstance of that day 12-whatever years ago, more years ago it was. Maybe she-because I think she was driving her other son's vehicle at the time when she was involved in the accident. Maybe she felt responsibility. Maybe she is-I don't know how old her son-I don't remember. I think he was only 18, 19 years old at the time. Maybe she's the more responsible one and signed it. Maybe she didn't-maybe they didn't want him to sign it. Maybe he couldn't sign it because he didn't have more than 25 years of age or not on the rental car. I don't know exactly. In any of those circumstances, she's the one legally responsible for the rental car, is she not? Whether he's-she doesn't personally think he's responsible, whether legally he can't run a car. She took that responsibility upon herself to run that vehicle. Well, I guess you'd be responsible in different respects. For example, you could be responsible for the charges. You know, here we have a billing, though, that's going to State Farm. State Farm is taking responsibility for the, you know, whatever daily rental charges. Is she responsible for the use of the vehicle? Normally, like, for example, someone uses a vehicle that you've given to them with permission, normally, unless they're doing something on your behalf, you know, that person would be responsible in tort for their use of the vehicle, perhaps in other facts and circumstances. So she could be responsible, you know, if State Farm didn't pay the-pay the whatever, whatever, $50 a day, I don't know what it was, you know, she could be responsible for those charges to agency-rent-a-car. But that doesn't make-that doesn't make her, you know, Country Mutual didn't have any agreement with State Farm, didn't have any agreement with agency-rent-a-car, didn't have any agreement with Atlanta Casualty. You can't make somebody out by your side on some contract. You can't make a third party liable. They have no right to make us liable, and they didn't. Are you saying that any time someone rents a car and declines the rental insurance, that they can't allegate their car insurance company? Because when she declines, she didn't? You can under some circumstances. I know it's kind of-it might depend on net policy. It might be, you know, with the frequent and regular use, it might or might not. It depends. People have credit cards. People have insurance that does cover them. Is the car-is additional car being rented for somebody else? Is it a replacement for a vehicle that's out of service? I mean, it can be in many circumstances. So I admit, God, it could-you could be. Then you would look at all those facts. You would look at all the documents. You'd have to, you know, compare other insurance clauses, compare the stats. What does current insurance policy with your company say regarding the rental of a vehicle? Regarding the rental of a vehicle? Well, I don't know if it specifically used the word rental. It did have a provision that a vehicle can qualify as an insurer where it's a temporary substitute where your vehicle is out of use because of service repair. The exact language is there, but it says, like, service repair or maintenance or something. It was out of service. But isn't there also a provision for non-owned vehicles in your policy? I forget what the exact language is if there's non-owned. But sometimes you have to specifically obtain that coverage. You can get coverage, for example, if you get a vehicle that's going to be a replacement for a vehicle that's insured. You might have a certain period of time where that coverage would be in effect. But normally you're not entitled to. That's why it's only for a temporary substitute because otherwise you're increased. If you're just a temporary for a vehicle that's out of service, you're only paying to insure one vehicle. If you're adding a vehicle, you're getting insurance for two vehicles. You're increasing the risk without any change in the premium. Are there two operative provisions? One is whether or not the escort was an insured vehicle. And the other one is whether somebody who was protected by the policy was driving what's defined in the policy as a non-owned vehicle. Well, one issue is the date was raised below. Was there any duty to defend this vehicle, the use of this vehicle under this country mutual policy because it was an insured vehicle, which we asserted was not because it was not a temporary substitute for Lorraine Jenkins' Hyundai. It was a temporary substitute for the Maximo and by Patrick Hatter. There are also issues raised below for lack of permission. But what's also different about this case, Your Honor, is this is not a case over a duty to defend, whether someone owed money to John Bennett's insurer or John Bennett. Or John Bennett, you know, is seeking to return his defense fees or someone by segregation. This is kind of a little different circumstance. This is not the typical, sort of irrespective of those facts, there's no obligation, there's no mechanism recognized under the law under these facts for agency to recover the money spent defending the use of its vehicle by someone allegedly using it with permission, where they're sued also, where they're the primary, you know, they're the owner of the vehicle, to recover under the theories that the Supreme Court has articulated are available, and only one of which was sued upon, you know, identification, equitable subrogation, equitable contribution. And there couldn't be identification because there was no agreement between agency and country mutual. They're total strangers to each other. You know, there's no, I used the word once, subrogation, I apologize for that. There is no subrogation claim. It's an equitable contribution claim. Mosley cited the cases that preceded the Supreme Court's decision in Holmes v. Cincinnati, sort of kind of defining, and some argue narrowly, but that's what the Supreme Court has done, narrowing or specifically articulating the circumstances where another party can recover. Counsel may have two minutes. Okay. And not every remedy, not every situation maybe has a remedy, but equitable contribution doesn't apply here for the reasons I set forth in my brief. You know, there, like equitable subrogation talks about the same loss, so much broader than an equitable contribution where it talks about the same risk. It has to do with basically the concurrent, identical risk, interest, and here, clearly they're not. In Holmes, there was the general contractor covered, the one insurer covered the general contractor for work arising out of one insurer's work, and then another insurer covered the general contractor for liability arising out of a different subcontractor's work, which the court found were different risks, different insurers. There's a question of whether even agency soil rights, did I even insure to even seek this relief? You know, are they, is a rental car company that has a certificate of self-insurance an insurer? Do you even seek this relief in the first place? And they have, they rely heavily on rental agreement, which they say says they're excess, but it also says they're excess to any certificate of self-insurance. Here they have two documents that agency provides coverage under for this vehicle, the rental agreement and the certificate of self-insurance. So if the rental agreement is excess to the certificate of self-insurance, that implies they're ambiguous or it has to be primary, then to the rental car contract. So they have two documents. The certificate of self-insurance applies to every vehicle owned by agency. The country mutual policy only applies to Lauren Jenkins' use of a particular vehicle or a temporary substitute for her, that vehicle while it's in repair. These are vastly different risks, and they argue that, you know, the normal rule, and I think it still should apply here normally that, you know, primary insurance follows the owner of the vehicle, which is agency in this case. But here they have, even if the court didn't find that, the only way to recover on these facts would be an encyclical contribution theory, which they can't, whereas we're one insurer that the policy is ensuring the same risk and same interest, which isn't the case here. Your time is up. Thank you. Thank you, Mr. Carlson. Mr. Pacer? Thank you. Your Honors, counsel, I think Your Honors pointed out quite aptly that this is clearly a substitute vehicle for the vehicle owned by Lauren Jenkins. This is an issue that was covered both by Judge Penn in his denial of their motion for summary judgment and in the decision made by Judge Petrangura that there is evidence supporting the fact that Lauren Jenkins' vehicle was out of service, that she was borrowing her first son's car in order to be a substitute, and then she went out and used this car as a substitute because she needed to get to and from work. This is the standard way, as Your Honor pointed out, that insurance is handled when you rent a car. You go in, you make a decision whether you are going to buy the insurance company, excuse me, insurance from the rental car company or you are going to rely on your own. To allow otherwise would be to allow Lauren Jenkins to perpetrate a fraud upon agency rent-a-car where I am going to use my own insurance, but I actually can't for some other reason. This is the standard way that is supported both by State Farm v. Hertz, Dodson v. Agency Rent-a-Car, and Insurance Car Rentals v. State Farm. This is, as Your Honor pointed out, uncontained in the policy as a non-owned substitute vehicle driven by a member of her family. The language of that policy, again, was cited both by Judge Penn in his ruling on a summary judgment and in the judgment entered in this case. This case was decided that under the specific policy of Country Mutual that this car would be covered, potentially be covered. Addressing a couple of the other issues that he made out, first of all, that we are not available, we cannot avail ourselves to equitable contribution because we are not an insurance company. This has already been decided both in general and specifically. Interestingly, all the seminal cases, American States, Fireman's v. Maryland, Cincinnati v. American Heart, where while they all dealt with insurance companies seeking equitable contribution from another insurance company, they specifically used the word, when stating the black letter law, a co-obligor, not a co-insurer. All of these cases and all the other cases that rely on these cases use the term co-obligor, not co-insurer. More to the point, however, in the case of Chicago Hospital Risk Pooling Program v. ISMI, we have a case where it was not an insurance company, and the court decided that, yes, equitable contribution does apply. With regards to the certificate of self-insurance v. the rental agreement, the certificate of self-insurance is filed with the Secretary of State's office solely for one purpose, to show financial responsibility. It does not determine how the obligation will be covered. Rather, it is the rental car agreement that covers this that is specifically decided in insurance car rentals v. State Farm, that it is the language of the rental car company that allows an insurance company to provide, to meet the statutory requirements, but to then make themselves excess. What we have here is the exact same obligation. Oh, excuse me, I should also mention the risk. He brought up risk and specifically, I think, referred to Home v. Cincinnati, one of the few cases referred to many times in his brief. The difference in Home, first of all, Home stated some very good law. It said that when risk is not specifically defined, we use the common definition, a possible loss or injury. Here we have the exact same risk, that a vehicle being driven, this vehicle, this car owned by an insurance car being driven by somebody in the renter's household would get into an accident and a third party would be injured. That is the reason for the statute. That is the reason for insurance. And we have the exact same risk. The difference between Home and Cincinnati was the work of two separate contractors that said we only cover this contractor's work or this contractor's work. That does not exist in this situation. Unless you have any questions. Yes, ma'am. Thank you very much. Thank you. And could I also make a rebuttal? Just briefly, I don't know that the legislature has really set a situation where they are trying to exempt rental car companies from liability. I mean, they set up a system where they're supposed to have insurance, from self-insurance or a financial bond or some other method of insurance. Obviously, that is why there's a lot of cases of litigation, because rental car companies, like other businesses, like to limit their liability.  And that's where someone reports to be excess or shifted. And obviously, that's good for lawyers, but I don't know if it's good for society, but it's a fact of life. It's not like the legislature has said, rental car companies, you don't have to provide insurance. Someone else should always provide your insurance. Here we have their vehicle. There isn't really an owned vehicle provision in the policy. There is a provision in the policy, for additionally acquired vehicle where it's going to be reported within 30 days for the premium. And really, the only other situation for an insured vehicle is the situation I described, where it's a temporary substitute for the vehicle described on the declarations page. Now, the home versus anti-case, again, I think counsel was confusing the idea of loss and risk. Again, the court had a detailed description of contribution and subrogation and talked about the same loss, is that loss, that accident that happened. But they talked about risk was narrower than loss. Then they had an extensive discussion, which, Your Honors, are obviously available to you, where it has to be insured the same entities, the same interests, and the same risks. They didn't say and or. They had a very, and here they're vastly different things. Of course, we have the two documents. We have the rental car agreement providing excess insurance and the certificate of self-insurance, which is subordinate. If you look at those two documents, they apply their own terms to each other, which just covers, generally, all of agencies' cars that they own without any limitation. And, therefore, I think it would be legally impossible for it to sustain without covering on the theory, the only theory raised below and pled and published evidence-based of equitable contribution. Therefore, we ask that judgment be reversed. Thank you. I thank you both for your arguments today. We will take this matter under advisement and put back to you as a written disposition.